IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARIO LOPEZ, | ) | CV F 08-719 AWI SMS |
| | ) | |
| **Plaintiff**, | ) | **MEMORANDUM OPINION AND** |
| **v.** | ) | **ORDER GRANTING IN PART AND** |
| | ) | **DENYING IN PART DEFENDANT'S** |
| COSTCO WHOLESALE | ) | **MOTION FOR SUMMARY** |
| CORPORATION and DOES 1 | ) | **JUDGEMENT** |
| through 25, inclusive, | ) | |
| | ) | (Doc. #14) |
| **Defendants.** | ) | |
| | ) | |

Plaintiff Mario Lopez contends that Defendant Costco Wholesale Corporation violated
the California Fair Employment and Housing Act, Cal. Gov't Code § 12940 ("FEHA"), by
discriminating against Plaintiff on the bases of his race, disability, and against public policy.
The court has jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a).

## PROCEDURAL BACKGROUND

On December 7, 2007, Plaintiff filed a complaint in the Fresno Count Superior Court.
The first cause of action alleges race and disability discrimination in violation of California
Government Code 12940. There appear to be four subsections to this cause of action. Plaintiff
alleges that Defendant (a) discriminated against Plaintiff because of his race; (c) discriminated
against Plaintiff because of his stress related disability; (d) harassed Plaintiff because of his race
and disability; and (d) failed to accommodate Plaintiff's stress related disability. The second
cause of action alleges intentional infliction of emotional distress. The third cause of action
alleges negligence. The fourth cause of action alleges negligent infliction of emotional distress.

The fifth cause of action alleges tortuous termination in violation of public policy.

On May 21, 2008, Defendant removed this action to this court based on diversity jurisdiction.

On July 17, 2009, Defendant filed a motion for summary judgment.   Defendant contends that Plaintiff's claims for race discrimination and disability discrimination fail as a matter of law because Defendant had a legitimate non-discriminatory reason to terminate Plaintiff and Plaintiff cannot show this reason was pretextual.    Defendant contends Plaintiff's claim for harassment fails because there is no evidence Plaintiff experienced intolerable working conditions. Defendant contends Plaintiff's claims for intentional and negligent infliction of emotional distress fail because there is no evidence Defendant engaged in extreme or outrageous conduct.

On August 3, 2009, Plaintiff filed an opposition.    Plaintiff contends that Plaintiff was subjected to adverse employment action because of his physiological condition.  Plaintiff claims Defendant refused to transfer Plaintiff to accommodate his stress related disability but other non-Hispanic individuals were given transfers.

On August 10, 2009, Defendants filed a reply.

**STATEMENT OF UNDISPUTED FACT**

Plaintiff started working for Defendant Costco as a regular employee at the Fresno Warehouse in February 2001.   During the relevant time he worked as a merchandise stocker.

Sometime during 2001, Plaintiff started dating his coworker, Christy Kehler, and the two had a daughter in August 2003.

Plaintiff and Kehler had a difficult relationship and they broke up several times.   Plaintiff found it difficult to work on the same shift as Kehler as more and more of their personal issues spilled into the workplace.

For example, on one occasion Plaintiff told his manager that he would be late to work because he was at the doctor's office with Kehler.   Kehler later allegedly told Plaintiff's manager

that Plaintiff had in fact simply been stuck in traffic.    Plaintiff admitted he had been dishonest, and Plaintiff received a counseling notice as a result.

On one occasion Plaintiff attended a party with Kehler, who had hickeys on her neck. Kehler allegedly told her husband (whom she was divorcing) that Plaintiff had caused the marks by grabbing her neck.    Kehler's father got wind of this and called the warehouse to find out where Plaintiff was.    To discourage her father from confronting Plaintiff, Kehler allegedly told him that Plaintiff was a gang member.

Plaintiff claims that the stress of working with Kehler caused him to develop a substance abuse problem with alcohol and "meth."

In August 2005, Plaintiff sought assistance through Defendant's employee assistance Program ("EAP") and checked himself into an inpatient treatment program for 20 days.

Following the inpatient program, Plaintiff entered into a course of outpatient treatment. On or about August 29, 2005, Plaintiff completed the in-patient treatment program at 11th Hour Rehabilitation.  Plaintiff regularly attended the aftercare treatment sessions at the 11th Hour facility except when he was on a doctor's leave of absence.

Plaintiff's psychiatrist, Dr. Atwal, released Plaintiff to return to work without restrictions.

Consistent with Defendant's policy, when Plaintiff returned to work, he was required to sign a Contract for Continued Employment (the "Contract").    Under the Contract, Plaintiff agreed that his continued employment with Defendant was contingent upon successfully completing his course of treatment and complying with Defendant's policies and procedures. Plaintiff agreed to direct the EAP administrator to release program compliance information to his manager or Defendant's Human Resource Department.  Plaintiff signed the Contract on September 22, 2005.

On November 4, 2005, Dr. Santam S. Atwal prescribed a transfer to a different store to address Plaintiff's mental stress.

On or about November 8, 2005, Plaintiff visited his family doctor and learned his blood

1   pressure was high.

2       Plaintiff's doctor excused him from work initially until November 14, 2005, but his leave

3   was extended to November 17, 2005.

4       Although Plaintiff's approved leave expired on November 17, 2005, Plaintiff did not

5   return to work or request an extension of his leave of absence as required under Defendant's

6   policy.

7       By letter dated November 30, 2005, Robin Prideaux, the Warehouse Manager at the

8   Costco Warehouse in Fresno, informed Plaintiff that if he did not call Prideaux or request an

9   extension of his leave of absence within 48 hours his employment would be terminated.

10  Plaintiff did neither.

11      In fact, Plaintiff testified that he had made the decision to quit his job on the same day he

12  received Prideaux's letter.

13      Prideaux received a call from the outpatient facility where Plaintiff was being treated,

14  informing her that Plaintiff had not showed on November 30, 2005 or December 1, 2005 for

15  sessions.   Plaintiff provides evidence that no sessions were scheduled on November 30, 2005 or

16  December 1, 2005.

17      Defendant provides evidence that Plaintiff was terminated effective December 9, 2005 for

18  failing to comply with the contract and job abandonment.   Plaintiff offers his opinion that he was

19  forced to quit because Defendant failed to accommodate his mental disability with a transfer.

20      Plaintiff is Hispanic and is of Mexican ancestry.

21      Defendant had a corporate policy of transferring co-workers who have a relationship if

22  they were in the same department or if such co-worker audits their work.   This policy calls for a

23  departmental transfer.  Plaintiff made requests to be transferred pursuant to this policy.   Plaintiff

24  was not transferred.  The policy only concerned departmental transfers, whereas Plaintiff sought

25  a transfer to another warehouse.   See Exhibit 4 to Lopez Declaration.

26      No party has offered evidence on whether there was a vacant position in another

27

28                                            4

1  warehouse at the relevant time.

2      Plaintiff testified at his deposition that people were talking about a bakery manager who

3  was married to the meat manger but having an affair with the floor manager, Dave Borunda.

4  The bakery manager, meat manager, and Dave Borunda where all Caucasian.   Plaintiff testified

5  that he believed the meat manager was transferred.

6

7                                    **LEGAL STANDARD**

8      Summary judgment is appropriate when it is demonstrated that there exists no genuine

9  issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

10  Fed. R. Civ. P. 56 (c); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Poller v.</u>

11  <u>Columbia Broadcast System</u>, 368 U.S. 464, 467 (1962);  <u>Southern California Gas Co. v. City of</u>

12  <u>Santa Ana</u>, 336 F.3d 885, 888 (9th Cir 2003).

13              Under summary judgment practice, the moving party
                [A]lways bears the initial responsibility of informing the district
14              court of the basis for its motion, and identifying those portions of
                "the pleadings, depositions, answers to interrogatories, and
15              admissions on file, together with the affidavits, if any," which it
                believes demonstrate the absence of a genuine issue of material
16              fact.

17  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Miller v. Glenn Miller Productions, Inc.</u>, 454

18  F.3d 975, 987 (9th Cir. 2006).  A fact is material if it could affect the outcome of the suit under

19  the governing substantive law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986);

20  <u>Miller</u>, 454 F.3d at 987.   "[W]here the nonmoving party will bear the burden of proof at trial on

21  a dispositive issue, a summary judgment motion may properly be made in reliance solely on the

22  'pleadings, depositions, answers to interrogatories, and admissions on file.'"  <u>Anderson</u>, 477 U.S.

23  at 248;  <u>Fortyune v. American Multi-Cinema, Inc.</u>, 364 F.3d 1075, 1080 (9th Cir. 2004).  Indeed,

24  summary judgment should be entered after adequate time for discovery and upon motion against

25  a party who fails to make a showing sufficient to establish the existence of an element essential

26  to that party's case, and on which that party will bear the burden of proof at trial.  <u>Celotex Corp.</u>

27

28                                          5

477 U.S. at 322; Miller, 454 F.3d at 987.   "[A] complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex

Corp. 477 U.S. at 322.  In such a circumstance, summary judgment should be granted, "so long

as whatever is before the district court demonstrates that the standard for entry of summary

judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

        If the moving party meets its initial responsibility, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities

Serv. Co., 391 U.S. 253, 288-89 (1968); Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies,

Inc.,210 F.3d 1099, 1103 (9th Cir. 2000).   The opposing party cannot "'rest upon the mere

allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific

facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records,

515 F.3d 1019, 1030 (9th Cir.2008) (quoting Fed. R. Civ. Pro. 56(e)); Miller, 454 F.3d at 987.  In

attempting to establish the existence of this factual dispute, the opposing party may not rely upon

the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts

in the form of affidavits, and/or admissible discovery material, in support of its contention that

the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at

289; Miller, 454 F.3d at 987.  The opposing party must demonstrate that the fact in contention is

material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Cline v. Industrial Maintenance Engineering &

Contracting Co., 200 F.3d 1223, 1229 (9th Cir. 2000), and that the dispute is genuine, i.e., the

evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson,

477 U.S. 248-49; In re Caneva, 550 F.3d 755, 761 (9th Cir. 2008); Lindsey v. SLT Los Angeles,

LLC, 447 F.3d 1138, 1144 (9th Cir. 2006).

        In the endeavor to establish the existence of a factual dispute, the opposing party need not

establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

6

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; Giles v. General Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); Poller, 368 U.S. at 468; Price v. Sery, 513 F.3d 962, 965 n.1 (9th Cir 2008); Lockett v. Catalina Channel Exp., Inc., 496 F.3d 1061, 1064 (9th Cir. 2007). "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson, 477 U.S. at 255); Miller, 454 F.3d at 987; Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

Additionally, the court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references. See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

Federal Rule of Civil Procedure 56(e)(2) expressly permits a district court to enter summary judgment against a party who fails to oppose issues raised in a motion for summary

7

1   judgment, "if appropriate."   Summary judgment "is appropriate" under Rule 56(e)(2) if a motion

2   for summary judgment adequately contends there are no triable issues of fact, and such

3   contention is unopposed. Fed.R.Civ.P. 56(e)(2); Henry v. Gill Indus., Inc., 983 F.2d 943, 950 (9th

4   Cir.1993).   The court cannot grant summary judgement solely because the plaintiff failed to

5   oppose it.  Martinez v. Stanford, 323 F.3d 1178, 1183 (9th Cir. 2003); Henry, 983 F.2d at 950.

6          Ninth Circuit has stated that a plaintiff  abandons claims by not raising them in opposition

7   to a  defendant's motion for summary judgment.  Shakur v. Schriro, 514 F.3d 878, 892 (9th Cir.

8   2008); Jenkins v. Cty. of Riverside, 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005).  A claim  not

9   referred to in an opposition to a motion for summary judgment must be dismissed.  Shakur, 514

10  F.3d at 892.

11

12                              **DISCUSSION**

13  **A.  Discrimination Based on Mental Disability**

14         The complaint alleges that Defendant discriminated against Plaintiff because of his

15  mental disability in violation of FEHA, California Government Code § 12940(a).   Section 12940

16  provides that it is:

17             an unlawful employment practice, unless based upon a bona fide occupational
              qualification … [¶] [f]or an employer, because of the … physical disability,
18             mental disability … of any person, to refuse to hire or employ the person or to
              refuse to select the person for a training program leading to employment, or to bar
19             or to discharge the person from employment or from a training program leading to
              employment . . . .
20

21  Cal. Gov. Code § 12940(a); Hastings v. Department of Corrections, 110 Cal.App.4th 963, 971

22  (2003).   FEHA "prohibits discrimination based on an employee's physical disability."  Green v.

23  State of California, 42 Cal. 4th 254, 262 (2007).

24         A FEHA claim of discrimination is subject to the three-part test for federal discrimination

25  claims enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), in which (1) the

26  plaintiff must establish a prima facie case of discrimination; (2) the employer must offer a

27

28                                          8

legitimate reason for his actions; (3) the plaintiff must prove that this reason was a pretext to mask an illegal motive. Guz v. Bechtel National, Inc., 24 Cal.4th 317, 354-56 (2000); Brundage v. Hahn, 57 Cal.App.4th 228, 236 (1997).   As with a claim brought under the Americans with Disabilities Act ("ADA"), to state a prima facie case under section 12940(a), the plaintiff must establish that: (1) he suffers from a disability; (2) he is a qualified individual; and (3) he was subjected to an adverse employment action because of the disability.  Finegan v. County of Los Angeles, 91 Cal.App.4th 1, 7 (2001);  Deschene v. Pinole Point Steel Co., 76 Cal.App.4th 33, 44 (1999);  Brundage v. Hahn, 57 Cal.App.4th 228, 236 (1997).   A "qualified individual" means that the plaintiff "can perform the essential duties of the employment position with reasonable accommodation."  Bates v. United Parcel Service, Inc., 511 F.3d 974, 999 (9th Cir. 2007); Green v. California, 42 Cal.4th 254, 262 (2007).   Because section 12940 is modeled after federal anti-discrimination laws, the California courts have found that decisions interpreting federal statutes are relevant when interpreting similar provisions of section 12940.  Finegan, 91 Cal.App.4th at 7.

Defendant contends that Plaintiff has failed to show he was discriminated against because of his disability and failed to show Defendant did not have a legitimate non-discriminatory reason to terminate Plaintiff's employment.

Although a plaintiff needs to present only minimal evidence in order to establish a prima facie case of disability discrimination, the court concludes that Plaintiff has failed to do so here. Taking the evidence in the light most favorable to Plaintiff, Plaintiff has a disability.   Plaintiff provides evidence that he suffered from mental stress and a doctor prescribed a transfer. However, Plaintiff has not offered evidence that he was a qualified individual performing his job in a satisfactory manner.  After he saw his doctor on November 8, 2005, Plaintiff's doctor excused him from work until November 17, 2005.   Plaintiff did not return to work or request an extension of his leave as required under Defendant's policy.  Prideaux wrote Plaintiff a letter informing him that he needed to call Prideaux or request an extension of his leave of absence within 48 hours.   Plaintiff did neither, and Defendant terminated Plaintiff on December 9, 2005.

Thus, at the time of Defendant's alleged discriminatory termination, Plaintiff had abandoned his job and was not performing in a satisfactory manor.  Finally, Plaintiff has not offered proof that Defendant treated him differently from a similarly situated employee who does not belong to the same protected class.   Plaintiff has cited no evidence that employees without disabilities who requested a transfer and then failed to show up to work were not terminated.  Because Plaintiff has failed to establish a prima facie case, the court concludes that Defendant is entitled to summary judgment with respect to his disability discrimination claim.

The court would reach the same conclusion even if Plaintiff had established a prima facie case.   Defendant has presented significant evidence that Plaintiff was terminated because he failed to return to work, did not contact Prideaux, and/or request an extension of his leave of absence.  Plaintiff  would have the burden of presenting evidence from which a reasonable jury could conclude by a preponderance of the evidence that Defendant undertook the challenged employment action because of his disability.  There simply is no admissible evidence in the record from which a reasonable jury could conclude that Defendant terminated Plaintiff because of his disability rather than his failure to return to work.   Thus, Defendant is entitled to summary judgment on the disability discrimination claim.

**B.  Race Discrimination**

The complaint alleges contends that Defendant discriminated against him because of his race in violation of FEHA.   FEHA makes it unlawful for an employer,

> because of the race, . . . . , color, national origin, ancestry, . . . ., to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

Cal. Gov. Code § 12940(a).   As discussed above, FEHA uses the McDonnell Douglas "three-stage burden-shifting test" in the context of race discrimination cases.   Guz, 24 Cal.4th at 354; Jones v. Dept. of Corrections & Rehabilitation, 152 Cal.App.4th 1367, 1379-80 (2007).   A plaintiff meets his initial burden by establishing a prima facie case of discrimination, which

1  requires the production of evidence that (1) he was a member of a protected class, (2) he was

2  competently performing the position he held, (3) he suffered an adverse employment action, such

3  as termination, and (4) some other circumstance suggests discriminatory motive.  Guz, 24 Cal.4th

4  at 355.   If a prima facie case is presented, a defendant may rebut that presumption by producing

5  admissible evidence of a legitimate, nondiscriminatory rationale.  Id. at 355-56.   If the employer

6  satisfies this burden, the plaintiff must prove that the employer's reasons are pretextual. Id.   The

7  plaintiff in a discrimination action may establish pretext "either directly by persuading the court

8  that a discriminatory reason more likely motivated the employer or indirectly by showing that the

9  employer's proffered explanation is unworthy of credence."  Morgan v. Regents of University of

10  California, 88 Cal.App.4th 52, 68-69 (2000).   Accordingly, the plaintiff must provide evidence

11  showing that the employer's intent or motive was discriminatory; The ultimate burden of

12  persuasion remains with the plaintiff.  Guz, 24 Cal.4th at 383.

13         Defendant contends that Plaintiff has failed to show he was discriminated against because

14  of his race and failed to show Defendant did not have a legitimate non-discriminatory reason to

15  either not transfer Plaintiff or terminate Plaintiff's employment.  Plaintiff appears to base this

16  claim on Defendant's failure to transfer him when other non-Hispanic employees who had affairs

17  were transferred.

18         Plaintiff is a member of a protected class because he is Hispanic and of Mexican ancestry.

19  There is no evidence of whether prior to November 17, 2005, Plaintiff was preforming his job

20  satisfactorily.   Plaintiff claims the adverse employment action at issue in his racial

21  discrimination claim is Defendant's failure to transfer him pursuant to his request when other

22  employees involved with relationships were transferred.  Plaintiff's only evidence of this racial

23  discrimination is his declaration and his deposition in which he states his belief that the

24  Caucasian meat department manager was transferred when Plaintiff claims there was an affair

25  between the meat manager's wife, the bakery manager, and the floor manager.  This evidence is

26  insufficient to create a genuine issue of material fact because no reasonable juror could believe

27

28                                                  11

that these vague hearsay allegations establish animus based on race.  The only evidence presented of another "affair triangle" when someone was transferred is uncorroborated, hearsay testimony. This cannot raise a genuine issue of material fact.

To the extent Plaintiff contends the adverse employment decision was his termination, Plaintiff has no evidence whatsoever that he was terminated because of his race.  The record clearly shows that Plaintiff failed to return to work, obtain an extension of his medical leave, or contact his manager.   Plaintiff has failed to show that Defendant treated other similarly situated employees who also failed to return to work, obtain an extension of their medical leave, and/or contact their manager more favorably than the Plaintiff.   Thus, Defendant is entitled to summary judgment on Plaintiff's racial discrimination claim.

**C.  Harassment**

The complaint alleges that Defendant harassed Plaintiff because of his race and/or disability.   The elements of a claim of hostile environment harassment under FEHA are: (1) the plaintiff belongs to a protected group; (2) the plaintiff was subject to unwelcome harassment because of being a member of that group; and (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. Aguilar v. Avis Rent A Car System, Inc., 21 Cal.4th 121, 130 (1999); Etter v. Veriflo Corp., 67 Cal.App.4th 457, 463 (1998);  Fisher v. San Pedro Peninsula Hosp., 214 Cal.App.3d 590, 608, 262 (1989).  The plaintiff must show a "concerted pattern of harassment of a repeated, routine, or generalized nature."  Aguilar, 21 Cal.4th at 131s, 87 Cal.Rptr.2d 132, 980 P.2d 846.

In this case, there is insufficient evidence for the court to find a disputed issue of fact as to whether there was a hostile work environment.   A plaintiff must present evidence that his workplace was "permeated with discriminatory intimidation," Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993), such that it is "subjectively and objectively" abusive.  Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995).   Plaintiff offers no evidence that he suffered harassment.  Plaintiff's opposition does not even dispute Defendant's contentions that there is no

1  evidence of harassment.   Thus, Defendant is entitled to summary judgment on Plaintiff's claim

2  of harassment.

3  **D.  Disability Discrimination Based on Defendant's Failure to Accommodate**

4          The complaint alleges that Defendant violated FEHA by failing to accommodate

5  Plaintiff's mental stress disability by transferring him to another store/warehouse.   Under

6  California Government Code § 12940(m), it is unlawful, and separately actionable under FEHA,

7  for an employer to fail to make reasonable accommodation for the known physical or mental

8  disability of an applicant or employee' unless the accommodation would cause undue hardship to

9  the employer.  Raine v. City of Burbank, 135 Cal.App.4th 1215, 1222-23 (2006) (citing Cal.

10  Gov. Code § 12940(m)); see also King v. United Parcel Service, Inc., 152 Cal. App. 4th 426, 443

11  (2007.  "[T]he position for which an accommodation is required is the employment position the

12  [disabled individual] holds or desires."  Hastings v. Department of Corrections,110 Cal.App.4th

13  963, 972 (2003).  The employee has "the burden of giving the employer notice of the disability."

14  Raine, 135 Cal.App.4th at 1222.  Once notice is given, the employer must take affirmative steps

15  and the parties must engage in an interactive process in order to attempt to fashion a reasonable

16  accommodation.  See King, 152 Cal.App.4th at 443; Gelfo v. Lockheed Martin Corp., 140

17  Cal.App.4th 34, 54 ( 2006); Raine, 135 Cal.App.4th at 1222.  An employer is only required to

18  make a "reasonable accommodation," it is not required "to choose the best accommodation or the

19  specific accommodation a disabled employee or applicant seeks."  Raine, 135 Cal.App.4th at

20  1222; Hanson v. Lucky Stores, Inc., 74 Cal.App.4th 215, 228 (1999).   Examples of "reasonable

21  accommodations" include:  "[a]ccessibility . . . [j]ob [r]estructuring …, reassignment to a vacant

22  position, part-time or modified work schedules, acquisition or modification of equipment or

23  devices, adjustment or modification of examinations, training materials or policies, the provision

24  of qualified readers or interpreters, and other similar actions."  Hastings, 110 Cal.App.4th at 972.

25  "A reassignment, however, is not required if there is no vacant position for which the employee

26  is qualified."  Raine, 135 Cal.App.4th at 1223; Spitzer v. Good Guys, Inc., 80 Cal.App.4th 1376,

27

28                                                13

1389 (2000).  The obligation to reassign an "employee who cannot otherwise be accommodated does not require creating a new job, moving another employee, promoting the disabled employee, or violating another employee's rights under a collective bargaining agreement."  Hastings, 110 Cal.App.4th at 978; Spitzer, 80 Cal.App.4th at 1389.  "What is required is the duty to reassign a disabled employee if an already funded, vacant position at the same level exists."  Raine, 135 Cal.App.4th at 1223; Hastings, 110 Cal.App.4th at 972.  Generally, "the reasonableness of an accommodation is an issue for the jury."  Prilliman v. United Air Lines, Inc., 53 Cal.App.4th 935, 954 (1997).

Defendant did not specifically move for summary judgment based on Plaintiff's claim that Defendant failed to accommodate his disability.  The facts regarding Plaintiff's claim of failure to accommodate are not raised until Plaintiff's opposition.  Summary adjudication is not warranted when a defendant never meets its initial responsibility to request summary judgment on a particular claim or cause or action.

Very little evidence concerning Defendant's alleged failure to accommodate Plaintiff's disability has been presented to the court.  Reviewing the evidence that has been presented in support of and in opposition to the motion for summary judgment, it is unclear whether material factual disputes exist.  It is unclear if Plaintiff informed Defendant of his need for a transfer based on mental stress.   It is unclear whether Plaintiff was offered a reasonable accommodation. It is unclear whether there was any open position at another Costco store that could have accommodated Plaintiff's qualifications and limitations.   Finally, there is insufficient evidence on whether the informal process broke down, and, if so, which party was responsible.

In its reply brief, Defendant contends that it is still entitled to summary judgment on this claim because Plaintiff failed to provide evidence that another position was available.  Both the Ninth Circuit, Federal District Courts, and California courts require **an employer** to demonstrate the following in order to obtain summary judgment on a claim of failure to accommodate:

> (1) reasonable accommodation was offered and refused; (2) there simply was no vacant position within the employer's organization for which the disabled

1
2
3

employee was qualified and which the disabled employee was capable of performing with or without accommodation; or (3) the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith.

4   Timmons v. United Parcel Service, Inc., 310 Fed.Appx. 973, 975 (9th Cir. 2009); Watkins v.

5   Ameripride Services, 375 F.3d 821, 829 (9th Cir. 2004); Hood v. Time Warner Cable LLC, 2009

6   WL 1202561, 6 (C.D.Cal. 2009); Riordan v. Federal Exp. Corp., 2008 WL 3166524, 15

7   (E.D.Cal. 2008); King v. United Parcel Service, Inc., 152 Cal.App.4th 426, 443 (2007); Jensen

8   v. Wells Fargo Bank, 85 Cal.App.4th 245, 263 (2000).   Here, the initial burden was on

9   Defendant to move for summary judgment on Plaintiff's claim that Defendant failed to

10  accommodate his mental stress disability by transferring Plaintiff.   By failing to meet its initial

11  burden to demonstrate that there exists no genuine issue as to any material fact, Defendant is not

12  entitled to summary judgment on this claim.

13  **E.  Intentional Infliction of Emotional Distress**

14          Plaintiff contends that Defendant's actions constituted intentional infliction of emotional

15  distress.   The elements of the tort of intentional infliction of emotional distress are: (1) extreme

16  and outrageous conduct by the defendant; (2) the defendant's intention of causing, or reckless

17  disregard of the probability of causing, emotional distress; (3) the plaintiff's suffering severe or

18  extreme emotional distress; and (4) actual and proximate causation of the emotional distress by

19  the defendant's outrageous conduct.   King v. AC & R Advertising, 65 F.3d 764, 770 (9th Cir.

20  1995);  Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 1001 (1993);  Christensen v.

21  Superior Court, 54 Cal.3d 868, 903 (1991); Delfino v. Agilent Technology, Inc., 145 Cal.App.4th

22  790, 808 (2006).   To be outrageous, the conduct must be so extreme as to exceed all bounds of

23  that usually tolerated in a civilized community.   Potter, 6 Cal.4th at 1001;  Christensen, 54

24  Cal.3d at 903. "The defendant must have engaged in 'conduct intended to inflict injury or

25  engaged in with the realization that injury will result." Potter, 6 Cal.4th at 1001.  "It is not

26  enough that the conduct be intentional and outrageous. It must be conduct directed at the

27

28                                          15

1  plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." <u>Christensen</u>, 54

2  Cal.3d at 903.  "Conduct is extreme and outrageous when it is of a nature which is especially

3  calculated to cause, and does cause, mental distress."   <u>Wilkerson v. Butler</u>, 229 F.R.D. 166, 171

4  (E.D. Cal. 2005).   Liability does not extend to mere insults, indignities, threats, annoyances,

5  petty oppressions, or other trivialities.   <u>Fisher v. San Pedro Peninsula Hospital</u>, 214 Cal.App.3d

6  590, 617 (1989).

7          There is no evidence of extreme or outrageous conduct.    In fact, Plaintiff has not even

8  opposed Defendant's motion for summary judgment on the infliction of emotional distress claim.

9   At best, there is evidence that Defendant refused to transfer Plaintiff and Defendant terminated

10 Plaintiff when he failed to return to work after his medical leave expired.   California courts have

11 held that "personnel management activity is insufficient to support a claim of intentional

12 infliction of emotional distress, even if improper motivation is alleged." <u>Janken v. GM Hughes</u>

13 <u>Electronics</u>, 46 Cal.App.4th 55, 80 (1996).   Personnel management actions include:

14 actions such as hiring and firing, job or project assignments, office or work station assignments,

15 promotion or demotion, performance evaluations, the provision of support, the assignment or

16 nonassignment of supervisory functions, deciding who will and who will not attend meetings,

17 [and] deciding who will be laid off. <u>Id</u>. at 64-65.  "Managing personnel is not outrageous

18 conduct beyond the bounds of human decency, but rather conduct essential to the welfare and

19 prosperity of society." <u>Id</u>. at 80.   The only facts presented to the court show that Defendant made

20 management decisions concerning Plaintiff's assignment and termination.   Thus, Defendant is

21 entitled to summary judgment on Plaintiff's intentional infliction of emotional distress claim.

22 **F. Negligence and Negligent Infliction of Emotional Distress**

23          The complaint alleges that Defendant was negligent and negligently inflicted emotional

24 distress on Plaintiff.   Defendant contends that the negligence causes of action are not available

25 because Plaintiff is alleging intentional conduct.    In support of its position, Defendant cites to

26 <u>Semore v. Pool</u>, 217 Cal.App.3d 1087, 1005 (1990).   In <u>Semore</u>, the California Court of Appeal

27

28                                            16

stated as follows:

> Plaintiff has also failed to state a cause of action for negligent infliction of emotional distress. As noted above, this cause of action is simply one for negligence. Plaintiff alleges only that defendants had a duty to refrain from conducting themselves with respect to plaintiff because of the foreseeability of risk of harm to plaintiff's emotional health. It is clear, however, that there was no duty not to discharge defendants and that any actions by the employer were intentional, not negligent. An employer's supervisory conduct is inherently intentional. The conduct alleged here does not support a cause of action for negligent infliction of emotional distress.

Semore, 217 Cal.App.3d at 1105 (internal cites and quotes omitted).

Plaintiff did not oppose Defendant's motion for summary judgment on the negligence claims, and Plaintiff offers no legal authority for the proposition that a negligence theory is also available for intentional employment conduct in violation of FEHA.   The limited available case authority appears to support Defendant's position.   The facts at issue in this action pertain to specific, intentional conduct by Defendant.   In addition, because the complaint does not allege unprovoked physical acts of aggression, Plaintiff's general negligence claims may be barred by the workers' compensation exclusivity rule. See Cal. Lab. Code § 3602; Torres v. Parkhouse Tire Serv., Inc., 26 Cal.4th 995, 1006 (2001); see also Fermino v. Fedco,Inc., 7 Cal .4th 701, 712-15 (1994). Thus, the court finds that absent Plaintiff providing the court with authority for negligence causes of action based on the conduct alleged in the complaint, Defendant is entitled to summary judgment on the negligence claims.

**G.  Termination in Violation of Public Policy**

The complaint alleges Plaintiff was terminated in violation of public policy.   In California, an "employer may not discharge an at will employee for a reason that violates fundamental public policy.  This exception is enforced through tort law by permitting the discharged employee to assert against the employer a cause of action for wrongful discharge in violation of fundamental public policy." Stevenson v. Superior Court, 16 Cal.4th 880, 887 (1997).  FEHA's prohibition against racial and disability discrimination may form the basis of a wrongful discharge in violation of public policy claim. See City of Moorpark v. Superior Court

18 Cal.4th 1143, 1159-61 (1998).  However, where a plaintiff's FEHA claim fails, a claim of wrongful discharge in violation of the public policy expressed in FEHA also fails.   De Horney v. Bank of America Nat'l Trust & Sav. Asso., 879 F.2d 459, 465 (9th Cir. 1989); Esberg v. Union Oil Co., 28 Cal.4th 262, 272 (2002).

Here, Defendant is entitled to summary judgment on all of Plaintiff's FEHA claims except for Plaintiff's claim that Defendant refused to accommodate his disability in violation of FEHA.   For those same reasons, Defendant is entitled to summary judgment on Plaintiff's wrongful termination in violation of public policy claim to the extent this claim is based on racial discrimination, disability discrimination, and racial and disability harassment.   However, this claim may still proceed at this time on Plaintiff's theory that he discharged in violation of public policy based on Defendant's refusal to accommodate his disability.

**ORDER**

Based on the above memorandum opinion, the court ORDERS that:

1.      Defendant's motion for summary judgment is GRANTED in part and DENIED in part as follows:

      a.      Defendant is granted summary adjudication on Plaintiff's FEHA claims alleging Discrimination Based on a Mental Disability, Discrimination Based on Race, and Harassment.

      b.      Defendant is granted summary adjudication on Plaintiff's Intentional Infliction of Emotional Distress claim.

      c.      Defendant is granted summary adjudication on Plaintiff's Negligence and Negligent Infliction of Emotional Distress claims.

      d.      Defendant is granted summary adjudication on Plaintiff's Termination in Violation of Public Policy claim to the extent this claim is based on Discrimination Based on a Mental Disability, Discrimination Based on

Race, and Harassment.

e.      Defendant is DENIED summary judgment on Plaintiff's FEHA claim

alleging Failure to Accommodate.

f.      Defendant is DENIED summary adjudication on Plaintiff's Termination in

Violation of Public Policy claim to the extent this claim is based on

Defendant's Failure to Accommodate.

2.      A status conference is set for October 13, 2009 at 2:00 p.m. in Courtroom 2 for

the parties and the court discuss a trial date and any further motions.

IT IS SO ORDERED.

**Dated:    October 7, 2009**                        /s/ Anthony W. Ishii
                                       CHIEF UNITED STATES DISTRICT JUDGE

19